GEORGE B. JACKSON, RESPONDENT, v. UNITED RAILWAY SIGNAL COMPANY, APPELLANT.

Argued May 29, 1924—Decided October 20, 1924.

1. Payment into court of the amount due a plaintiff will not stop the running of costs unless the costs up to the time of payment are also paid in.
2. Plaintiff's assignor agreed with defendant to assign certain patent license privileges and convey a factory plant and machinery in consideration of a stated sum in cash, the reservation of a royalty to plaintiff, and the reservation of an additional royalty to plaintiff's assignor. *Held*, that on a proper construction of the written contracts of the parties including the deed, the additional royalty was not merged in the conveyance but remained in full force after the deed was delivered.

On appeal from the Supreme Court.

For the appellant, *Martin P. Devlin.*

For the respondent, *James D. Carpenter, Jr.*

The opinion of the court was delivered by

PARKER, J. The controlling question in the case is whether the obligation of the defendant to pay Metallic Shell and Tube Company (assignor of plaintiff) a royalty of five cents per gross for the right to manufacture and market certain railway torpedoes protected by patent was abrogated and merged by subsequent writings by and between the metallic company and the united company. At the trial the judge of the Common Pleas of Monmouth county, to whom the cause had been referred by consent, suggested that the issue involved no substantial question of fact, and, counsel acceding to that view, the jury was discharged and the case submitted to the court without jury. The court ruled that the royalty agreement in question remained unimpaired, and gave judgment accordingly. The case is here on proper exception to his rulings invoked by the grounds of appeal.

Plaintiff's claim was twofold—*first,* that he, being patentee of the device in question, had, in 1912, by written contract, licensed the Metallic Shell and Tube Company to manufacture and sell it at a royalty of five cents per gross; and that, subsequently, that company transferred its license rights to the defendant, subject to that royalty. On this count defendant admitted its liability at the trial and paid the amount of the claim into court, omitting to add accrued costs. The only question now raised on this branch of the case is the defendant's liability for costs on that count. The judge held that, as he was finding for plaintiff on the other count, the plaintiff would have costs in any case. We think that, even if he erred in his finding on the second count, the plaintiff would be entitled to costs on the first, as the established practice in this state is that a payment into court must include the costs up to that time in any event. The practice is expounded by the late Justice Reed in *Levan* v. *Sternfeld,* *55 N. J. L.* 41.

The gravamen of the appeal relates to the disposition of the second count, which is based on a different royalty stipulation. The metallic company being, as we have seen, vested with the right of manufacture and sale under the Jackson license by a carefully drawn instrument dated April 27th, 1917, in ten numbered paragraphs, agreed with the defendant united company as follows:

"One. The party of the first part will forthwith assign, transfer and set over in its entirety all its rights, privileges, benefits and incidental obligations arising out of, or incidental to, a certain contract made between the party of the first part and one George B. Jackson, which contract bears date the 7th day of September, 1912, which assignment shall be absolutely comprehensive and include all rights to manufacture by license from the said George B. Jackson under certain letters patent obtained by him or applied for by him."

(2) To convey factory premises at East Providence, Rhode Island, with buildings, machinery, &c.

"An agreement to sell embodying the terms and conditions upon the compliance with which the deed shall be de-

livered as aforesaid, shall be forthwith executed and recorded. The deed itself shall be executed and delivered upon the compliance by the party of the second part with the terms and conditions hereinafter set forth."

(3) To sell and convey certain other machinery.

(4) Until October 31st, 1917, to manufacture for the defendant on specified terms.

(5) Schedule of cash payments to be made by defendant, aggregating $10,000.

(6) Assumption by defendant of liability of metallic company to Jackson (the subject-matter of the first count).

Then follows the paragraph on which the second count is based:

(7) "Seven. The party of the second part [defendant] hereby agrees to pay to the party of the first part [metallic] a royalty of five cents per gross for all railway torpedoes manufactured and sold by it within the scope of the George B. Jackson patents now issued or applied for. The party of the second part will render an accounting to the party of the first part every ninety days."

(8) Stipulation about insurance.

(9) Provision in case of default.

(10) Cancellation of all prior agreements.

Plaintiff in the second count claims under paragraph 7 as assignee of metallic, and it is conceded that he is entitled to whatever metallic might lawfully claim in the absence of the later assignment of its rights to him. To quote the language of the brief for appellant:

"As the facts then stood at the execution of this agreement, April 27th, 1917, the defendant, the United Railway Signal Company, was to pay five cents a gross to the Metallic Shell and Tube Company, and also five cents a gross to George B. Jackson, under the agreement between the Metallic Shell and Tube Company and George B. Jackson, of September 12th, 1912, *Exhibit D*-4, and which was assigned and included by the Metallic Shell and Tube Company under the agreement of April 27th, 1917, with the defendant."

Such being the unquestioned situation under the agreement of April 27th, 1917, it remains to consider the later transactions between the parties. The specific agreement for conveyance of the real estate and machinery, called for by paragraph 2 of the above, was executed under date of May 9th, 1917. It is in the usual form of a contract to convey real estate, describing the land specifically by lot and block numbers, including tools, machinery, &c., in the building, "and used in the manufacture of railway torpedoes." The consideration is carefully stated and should be quoted entire:

"The actual consideration which the said party of the first part agrees to accept, and the said party of the second part agrees to pay, for the conveyance of said lands, buildings, machinery and equipment above specified, and as and for the purchase-money thereof, together with other terms and conditions precedent to the said conveyance, are more fully and comprehensively set forth in a detailed memorandum of agreement, made and executed between the parties hereto, and dated the 27th day of April, A. D. 1917, to which said last-mentioned agreement, this agreement is supplementary and a part thereof [it being intended that both of said agreements be construed together as one complete agreement] ; said detailed agreement, dated April 27th, A. D. 1917, not to be recorded, but is herein mentioned for the purpose of setting forth constructive notice thereof upon the record."

The only other paper requiring consideration is the deed. Certain supposed informalities in corporate action were formally rectified, and nothing need be said on that subject. The deed, except as stated, is in the usual form of a deed of warranty. It recites a consideration of $100; conveys the lands described in the agreement of May 9th, also certain described machinery, adding the following:

"And for the consideration aforesaid, hereby assigning and transferring to said United Railway Signal Company all its rights, privileges, benefits and incidental obligations arising out of or incidental to a certain contract made between the said Metallic Shell and Tube Company and one George B. Jackson, which contract bears date the 7th day of September,

1912, which assignment shall be absolutely comprehensive and include all rights to manufacture by license from the said George B. Jackson under certain letters patent obtained by him or applied for by him.

"And, generally, all rights of the said Metallic Shell and Tube Company, fully set forth in that certain agreement made and executed by and between the said Metallic Shell and Tube Company and said United Railway Signal Company, bearing date the 27th day of April, A. D. 1917, whether the same are herein particularly specified or not."

It will be observed that the first of these paragraphs is identical with paragraph numbered one in the agreement of April 27th.

The argument, as we understand it, is that when the deed conveyed all the rights of manufacture held by the metallic company, such conveyance carried with it, as part of the property conveyed, the reservation of royalty under the seventh clause in the agreement of April 27th. We are clear that it did not. The consideration for the deed is that named in the agreement, the $100 named in the deed being, of course, merely a conventional amount to be stated on the record. Turning back to the agreement, we observe that it is for the transfer of (a) patent rights, (b) plant, (c) machinery, and that the consideration is likewise three-fold: (a) $10,000 in cash; (b) assumption of metallic's royalty obligation to Jackson, and (c) an agreement to pay another royalty to metallic, paragraph 7. To adopt appellant's view would be to confirm the deed and wipe out part of the consideration. The royalty is, in effect, a rent charge on the patent rights transferred. See *Cook v. Bayonne,* 80 *N. J. L.* 596. Very probably it would have been stated in the deed except for the fact that that deed was to go on record. Of course, the mention of $100 does not preclude proof of the true consideration, and the trial judge properly found that included the obligation to pay metallic five cents a gross so long as defendant used the patent.

The judgment is affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ.    16.

*For reversal*—None.